# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-1438

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARCUS DIXON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:07 CR 072—**Robert L. Miller, Jr.**, *Chief Judge.*

No. 08-2008

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

THOMAS CARR,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:07-CR-73—**Theresa L. Springmann**, *Judge.*

ARGUED OCTOBER 24, 2008—DECIDED DECEMBER 22, 2008

Before EASTERBROOK, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*.   We have consolidated for decision the appeals in two cases that raise overlapping issues, primarily under the ex post facto clause of Article I, section 9, of the Constitution.

Both defendants were convicted—Dixon after a bench trial on stipulated facts, Carr after conditionally pleading guilty—of violating the Sex Offender Registration and Notification Act (part of the Adam Walsh Child Protection and Safety Act of 2006), 18 U.S.C. § 2250. The Act, which went into effect on July 27, 2006, imposes criminal penalties on anyone who, being required by the Act to register, being a convicted sex offender under either federal or state law, and traveling in interstate or foreign commerce, knowingly fails to register as a sex offender, unless he can prove that "uncontrollable circumstances" prevented him from doing so. 18 U.S.C. §§ 2250(a), (b)(1). Congress instructed the Attorney General to "specify the applicability of the requirements of [the Act] to sex offenders convicted before [its enactment] or its implementation in a particular jurisdiction" and to "prescribe rules for the registration of any such sex offenders . . . who are unable to comply with" the requirement, also imposed by the Act, of registering before they are released from prison or, if they do not receive a prison sentence, within three days after being sentenced, and furthermore of re-registering within three days after a change of name, residence, employer, or student status. 42 U.S.C. §§ 16913(b), (c), (d).

The Act creates a continuing offense in the sense of an offense that can be committed over a length of time. If the convicted sex offender does not register by the end of the third day after he changes his residence, he has violated the Act, and the violation continues until he does register, just as a prisoner given a two-week furlough is guilty of escape if he does not appear by the end of the two weeks, and thus can be prosecuted immediately but his violation continues as long as he remains at large.

The Attorney General issued an interim regulation on February 28, 2007, that makes the Sex Offender Registration and Notification Act applicable to persons, such as Dixon and Carr, who were convicted of sex offenses before the Act was passed. 72 Fed. Reg. 8896, 28 C.F.R. § 72.3. They were convicted for failing to register in Indiana—to which they had come before the Act was passed—after the issuance of the regulation.

As the reference to "implementation in a particular jurisdiction" indicates, the sex offender is required only to register with the state in which he is a resident, employee, or student, as well as the jurisdiction of his conviction if different from his residence. 42 U.S.C. § 16913(a). Other provisions of the Act establish a system for pooling the information in the state registries to create in effect a national registry. See 42 U.S.C. §§ 16912, 16918-20, 16923-25. Indiana has yet to establish any procedures or protocols for the collection, maintenance, and dissemination of the detailed information required by the Act, and Dixon argues that therefore he could not comply. But recall that the Act requires the Attorney General to

"specify the applicability of [its] requirements . . . to sex offenders convicted before . . . its implementation in a particular jurisdiction," which the Attorney General did in his regulation of February 28, 2007. So Dixon was required by the Act to register with Indiana.

He also argues that he did not violate the Act because he traveled in interstate commerce before the Act was passed. But the statute does not require that the defendant's travel postdate the Act, any more than it requires that the conviction of the sex offense that triggers the registration requirement postdate it. The evil at which it is aimed is that convicted sex offenders registered in one state might move to another state, fail to register there, and thus leave the public unprotected. H.R. Rep. No. 218, 109th Cong., 1st Sess. 23-24, 26 (2005). The concern is as acute in a case in which the offender moved before the Act was passed as in one in which he moved afterward. There is a close analogy to the federal criminal law (currently codified at 18 U.S.C. § 922(g)(1)) that punishes felons who possess guns that have moved in interstate commerce. The danger posed by such a felon is unaffected by when the gun crossed state lines (as the felon-in-possession statute requires in order to be within Congress's power under the commerce clause), and so it need not have crossed after the statute was passed. *Scarborough v. United States*, 431 U.S. 563 (1977).

We would have a different case if the convicted sex offender's interstate travel took place before his conviction. Since the statutory aim is to prevent a convicted sex offender from circumventing registration by leaving the state in which he is registered, it can be argued that the

travel must postdate the conviction. It did here, so we need not decide whether it must in every case.

After the appeal in our case was argued, the Tenth Circuit held in *United States v. Husted*, 2008 WL 4792339 (10th Cir. Nov. 5, 2008), that the Act punishes only convicted sex offenders who travel in interstate commerce after the Act was passed. It is the only appellate case we have found that decides the question, although *United States v. May*, 535 F.3d 912 (8th Cir. 2008), assumes the same answer as *Husted*. The defendant in *United States v. Madera*, 528 F.3d 852 (11th Cir. 2008), raised the question and the court mentioned it but went on to reverse his conviction on another ground and decided to leave the question open. See *id*. at 857, 859 and n. 8.

The only ground that the court in *Husted* gave for its ruling is that the Act uses the present sense of the word "travel"; the Act applies to a convicted sex offender who "travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country." 18 U.S.C. § 2250(a)(2)(B). The court's interpretation creates an inconsistency. The word "resides" does not describe an action, which begins at a definite time, but a status, which may have existed indefinitely. Since the Act applies to a convicted sex offender who "enters or leaves," as well as one who "resides in," Indian country, it is apparent that old residents, as well as new entrants, are covered. On the Tenth Circuit's logic, a sex offender who has resided in Indian country since long before the Act was passed is subject to the Act but not someone who crossed state lines before the Act was passed. That result makes no sense, and gives force to the Supreme Court's remark in

*Scarborough*, referring to the analogous case of the felon in possession law, that "Congress' choice of tenses is not very revealing," 431 U.S. at 571, and to the remark in *Coalition for Clean Air v. Southern California Edison Co.*, 971 F.2d 219, 225 (9th Cir. 1992), that "the present tense is commonly used to refer to past, present, and future all at the same time."

The reference to "Indian country" is a tip-off that subsection (a)(2)(B) is designed to establish a constitutional predicate for the statute (just as movement in commerce is the constitutional predicate for the felon in possession law) rather than to create a temporal requirement. Congress has plenary authority over Indian reservations. E.g., *United States v. Kagama*, 118 U.S. 375 (1886).

The Tenth Circuit bolstered its tense-driven interpretation by reference to the policy against interpreting legislation to make it retroactive. But in relation to criminal statutes, that policy is stated in the ex post facto clause, and we shall see that applying the Act to persons who crossed state lines before its enactment does not violate the clause.

We therefore disagree with the Tenth Circuit's interpretation. Because this ruling creates an intercircuit conflict, we have circulated our opinion to the full court before issuing it, as required by Circuit Rule 40(e). There were no votes to hear the case en banc.

The remaining arguments made by Dixon (other than a frivolous argument based on the Administrative Procedure Act) are based on the Constitution. Most of them have no merit, such as his contention (made only at oral argument) that the movement of a person as distinct from

a thing across state lines is not "commerce" within the meaning of the Constitution's commerce clause. Dixon's lawyer must in the heat of argument have forgotten the Mann Act, 18 U.S.C. §§ 2421 *et seq.* Likewise without merit is his argument that for Congress to delegate to an official of the executive branch the authority to fill out the contours of a statute violates the separation of powers. It is commonplace and constitutional for Congress to delegate to executive agencies the fleshing out of criminal statutes by means of regulations. See, e.g., *Touby v. United States*, 500 U.S. 160, 165-69 (1991); *United States v. Arch Trading Co.*, 987 F.2d 1087, 1093-94 (4th Cir. 1993).

Nor did punishing Dixon deny due process of law because he did not receive personal notice of the enactment of the Sex Offender Registration and Notification Act, let alone of the requirements—still not fully specified by the Attorney General—under it. The second half of the argument is just a reprise of Dixon's first statutory argument. The first half runs afoul of cases like *United States v. Wilson*, 159 F.3d 280, 288-89 (7th Cir. 1998), which explain that it is not a defense to a criminal prosecution that the defendant had never heard of the statute under which he is being prosecuted. See also *United States v. Mitchell*, 209 F.3d 319, 322-24 (4th Cir. 2000); *United States v. Reddick*, 203 F.3d 767, 769-71 (10th Cir. 2000). Dixon cites *Lambert v. California*, 355 U.S. 225 (1957), which held (a holding the authority of which is undermined, however, by the Court's remarks in *Texaco, Inc. v. Short*, 454 U.S. 516, 537-38 n. 33 (1982)) that a city ordinance which required felons to register was a denial of due process because the "violation of its provisions is unaccompanied by any

activity whatever, mere presence in the city being the test. Moreover, *circumstances which might move one to inquire as to the necessity of registration are completely lacking*." 325 U.S. at 229 (emphasis added). In our case those circumstances are present. Dixon had had to register as a sex offender in South Carolina and would have known that he would have to do the same in Indiana; for each time he registered in South Carolina, he signed a form that said he "must send written notice of a change of address to a new state to the Sheriff of the county where [he] formerly resided and must register with the appropriate official in the new state."

Dixon has one good argument, however, and that is that his conviction for failing to register violated the Constitution's ex post facto clause. This is part of the original Constitution, not the Bill of Rights, and is foundational of liberty. *Marks v. United States*, 430 U.S. 188, 191-92 (1977). It both enforces the principle that legislation is prospective, whereas punishment—the job assigned by the Constitution to the judicial branch—is retrospective, and gives people a minimal sense of control over their lives by guaranteeing that as long as they avoid an act in the future they can avoid punishment for something they did in the past, which cannot be altered.

Dixon does not, and in light of *Smith v. Doe*, 538 U.S. 84 (2003), could not successfully, challenge the registration requirement itself as an ex post facto law. The requirement is regulatory rather than punitive. His argument is that all the conduct for which he was punished, not merely the sex crimes and the travel and the change of residence,

occurred before the Sex Offender Registration and Notification Act was made applicable to him by the Attorney General's regulation.

If all the acts required for punishment are committed before the criminal statute punishing the acts takes effect, there is nothing the actor can do to avoid violating the statute, and the twin purposes of the ex post facto clause are engaged. But by the same token as long as at least one of the acts took place later, the clause does not apply. *United States v. Campanale*, 518 F.2d 352, 364-65 (9th Cir. 1975); *United States v. Brown*, 555 F.2d 407, 416-17 (5th Cir. 1977). For in that case the defendant cannot be punished without a judicial determination that he committed an act after the statute under which he is being prosecuted was passed, and by not committing that act (provided of course that it is a voluntary act and so can be avoided by an exercise of volition) he would have avoided violating the new law.

Laws increasing the punishment for repeating an offense (or punishing the continuation of conduct begun before the law was passed) illustrate our point. They do not violate the ex post facto clause because even if the law was passed after the defendant committed his first offense and increases the punishment for a repeat offense, the defendant can avoid the increased punishment by not repeating (and so not being determined by a court to have repeated) the offense. *McDonald v. Massachusetts*, 180 U.S. 311, 312-13 (1901); *Gryger v. Burke*, 334 U.S. 728, 732 (1948); *United States v. Washington*, 109 F.3d 335, 337-38 (7th Cir. 1997); *United States v. Rasco*, 123 F.3d 222, 227 (5th Cir.

1997); *United States v. Brady*, 26 F.3d 282, 290-91 (2d Cir. 1994). Thus the fact that elements of Dixon's crime occurred before the Sex Offender Registration and Notification Act was made applicable to him does not make the application of the Act to his failure to register violate the ex post facto clause. The critical question concerns the third element of a violation of the Act, the failure to register.

The Act was made applicable to persons in Dixon's situation—persons convicted of sex offenses before the Act went into effect—by the regulation issued by the Attorney General on February 28, 2007. The regulation just says that such persons have to register. It doesn't say by when. By analogy to contract offers that do not specify a deadline for acceptance, we can assume that they would have to register within a reasonable time, *Burton v. United States*, 202 U.S. 344, 384-86 (1906) (applying the contract principle in a criminal case); see, e.g., *Chicago Tribune Co. v. NLRB*, 965 F.2d 244, 248-249 (7th Cir. 1992); *Vogel v. Melish*, 203 N.E.2d 411, 413 (Ill. 1964); *Family Video Movie Club, Inc. v. Home Folks, Inc.*, 827 N.E.2d 582, 586 (Ind. App. 2005); E. Allan Farnsworth, *Contracts* § 3.19, p. 157 (4th ed. 2004), unless the defendant could prove that uncontrollable circumstances prevented him from registering—for example if he were in a coma when the otherwise reasonable time for registering expired.

The indictment charges Dixon with having failed to register "from on or about February 28, 2007 to on or about April 5, 2007." There is nothing in the trial transcript or elsewhere in the record to indicate precisely when he

failed to register. The natural reading of the indictment is that he didn't register before April 5 or thereabouts, at the earliest, but that is just the charge and there is no evidence. It would hardly be reasonable to require that he have registered no later than February 28, since that was the day on which the interim regulation, subjecting him to the Act, was issued. So far as the record reveals, not only his conviction of a sex offense and his travel in interstate commerce, but his failure to register as well, occurred before the Act took effect with respect to the class of offenders to which he belongs, if as we believe the Act requires registration not on the day the Act went into effect or a regulation by the Attorney General made the Act applicable to a defendant, but within a reasonable time after that.

It is true that Indiana law required Dixon to register as a sex offender when he moved to Indiana. Ind. Code. §§ 11-8-8-7(a)-(e), (g), § 11-8-8-17(a). So in a sense (though a loose one, because the federal Act requires more than the Indiana one—with the sections of that Act just cited, compare 42 U.S.C. § 16913), the federal Act just ordered him to do what he was required to do anyway. But it did more: it created a federal criminal penalty on top of the state criminal penalty for failure to register. The ex post facto clause is violated when the government rather than creating a new crime increases the penalty for an existing one. *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798); *Dobbert v. Florida*, 432 U.S. 282, 292-93 (1977); *Prater v. U.S. Parole Commission*, 802 F.2d 948, 952-53 (7th Cir. 1986); *United States v. Terzado-Madruga*, 897 F.2d 1099, 1124 (11th Cir. 1990).

An alternative analysis, which brings us to the same point however, harks back to our earlier discussion of fair notice. Concern with due process gives rise to the question "how a legislature must go about advising its citizens of actions that must be taken to avoid a valid rule of law," and "the answer to this question is no different from that posed for any legislative enactment affecting substantial rights. Generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *Texaco, Inc. v. Short*, *supra*, 454 U.S. at 531-32; see *Jones v. United States*, 121 F.3d 1327, 1328-30 (9th Cir. 1997). The close relation between the concern with providing that opportunity and the concern that animates the ex post facto clause was remarked by Justice Stevens in a concurring opinion in *Hodel v. Irving*, 481 U.S. 704, 733 n. 18 (1987): "A statute which denies the affected party a reasonable opportunity to avoid the consequences of noncompliance may work an injustice similar to that of invalid retroactive legislation." Whatever the minimum grace period required to be given a person who faces criminal punishment for failing to register as a convicted sex offender is, it must be greater than zero. An analogy can be drawn to *Bonie v. City of Columbia*, 378 U.S. 347 (1964), where the Supreme Court held that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law." *Id*. at 353.

Carr's case, to which we now turn, is simpler than Dixon's. Although his interstate travel like Dixon's preceded the application of the Sex Offender Registration

and Notification Act to him, and although he assumes (as Dixon argues) that the Act requires that the travel postdate that application, the only ground of his appeal is that his conviction violated the ex post facto clause. But he does not and cannot complain that he was not given enough time to register in Indiana in order to avoid violating the Act, because he admits that he had still failed to do so "on or about July, 2007," almost five months after the Attorney General's regulation was issued that made the statute applicable to him. Five months is a sufficient grace period. Remember that on our interpretation of the statute as filled out by the regulation, the duty to register does not come into force on the day the Act becomes applicable to a person, or on the next day or next week, but within a reasonable time; and Carr had a reasonable time within which he could have registered. Had he done so, he could not have been convicted of violating the Act. Since his violation was not complete when the Act became applicable to him, his rights under the ex post facto clause were not violated.

The judgment in Dixon's case is reversed with directions to acquit; the judgment in Carr's case is affirmed.