Justice Auto,
with whom Justice Thomas and Justice Ginsburg join, dissenting.
The Court’s decision misinterprets and hobbles 18 U. S. C. § 2250(a), a provision of the Sex Offender Registration and Notification Act (SORNA or Act) that is designed to prevent dangerous sex offenders from evading registration requirements. SORNA requires convicted sex offenders to register, and to keep their registrations current, in each jurisdiction where they live, work, and go to school, 42 U. S. C. § 16913, and the provision at issue here, 18 U. S. C. § 2250(a), makes it a crime for a convicted sex offender who moves in interstate commerce[1] to fail to abide by the Act’s registration requirements. The question that we must decide is whether § 2250(a) applies only to those sex offenders who travel in interstate commerce after SORNA became law or whether the statute also reaches sex offenders, like petitioner, who were convicted[2] and traveled before SORNA *460 took effect but violated the registration requirement after that date.
The Court’s answer is that § 2250(a) applies only to sex offenders who moved from State to State after SORNA became law. The Court reaches this conclusion for two reasons: (1) the verb tense used in § 2250(a)(2)(B); and (2) the sequence in which the elements of the offense are listed.
As I will attempt to show, the Court’s textual arguments áre thoroughly unsound. And the conclusion that the Court reaches makes no sense. To appreciate the folly of the Court’s interpretation, consider the following two cases.
The first involves a situation in which, for present purposes, I assume that § 2250(a) applies.[3] A man convicted in State A for sexual abuse is released from custody in that State and then, after the enactment of SORNA, moves to State B and fails to register as required by State B law Section 2250(a) makes this offender’s failure to register in State B a federal crime because his interstate movement frustrates SORNA’s registration requirements. Because this offender is convicted and then released from custody in State A, the State A authorities know of his presence in their State and are thus in a position to try to ensure that he remains registered. At the time of his release, they can ascertain where he intends to live, and they can make sure that he registers as required by state law. Thereafter, they can periodically check the address at which he is registered to confirm that he still resides there. And even if he moves without warning to some other address in the State, they can try to track him down. Once this offender leaves State A, however, the authorities in that State are severely limited in their ability to monitor his movements. And because the State B authorities have no notice of his entry into their State, they are at a great disadvantage in trying to enforce State B’s registration law. Congress enacted *461 § 2250(a) in order to punish and deter interstate movement that seriously undermines the enforcement of sex-offender-registration laws.
The second case is the same as the first in all respects except that the sex offender travels from State A to State B before SORNA’s enactment. In other words, the sex offender is convicted and later released in State A; prior to SORNA’s enactment, he moves to State B; and then, after SORNA takes effect, he fails to register in State B, as SORNA requires.
Is there any reason why Congress might have wanted to treat the second case any differently from the first? In both cases, a sex offender’s interstate movement frustrates enforcement of SORNA’s registration requirements. In both cases, as a result of that interstate travel, the sex offender’s new neighbors in State B are unaware of the presence of a potentially dangerous person in their community, and the State B law enforcement authorities are hampered in their ability to protect the public. The second case is the case now before the Court, and the Court offers no plausible explanation why Congress might have wanted to treat this case any differently from the first.
If the text of § 2250(a) commanded this result, we would, of eourse, be obligated to heed that command. But the text of § 2250(a) dictates no such thing. On the contrary, when properly read, it reaches both cases.
Section 2250(a) provides in pertinent part as follows:
‘Whoever—
“(1) is required to register under the Sex Offender Registration and Notification Act.. .
“(2) ... (B) travels in interstate or foreign commerce .. . ;and
“(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
*462 “shall be fined under this title or imprisoned not more than 10 years, or both.” (Emphasis added.)
As I read this language, neither the use of the present tense in paragraph (2)(B) nor the sequence in which the elements are listed provides any basis for limiting the provision to those sex offenders who move from one State to another after SORNA’s enactment.
I
A
The dominant theme of petitioner’s argument is that the use of the present tense in § 2250(a)(2)(B) (“travels in interstate . . . commerce”) indisputably means that an offender’s interstate travel must occur after SORNA took effect. “There is no mystery about the meaning of the word 'travels,’ ” petitioner tells us. Brief for Petitioner 15. “[I]n ordinary usage it refers to current or future travel.” Ibid. According to petitioner, our “inquiry in this case should go no further than the plain language of § 2250(a)(2)(B), which applies to a person who 'travels’ in interstate commerce. Congress’s use of the present tense is unambiguous, and the statutory language accordingly should be the end of the matter.” Id., at 16-17; see also id., at 17 (use of the present tense “travels” is “dispositive”); id., at 18 (“[T]he use of the present tense in the statute should be decisive”); id., at 21 (use of the present tense “is enough to dispose of this case”).
B
A bad argument does not improve with repetition. And petitioner’s argument fails because it begs the relevant question. Petitioner belabors the obvious — that the present tense is not used to refer to events that occurred in the past — but studiously avoids the critical question: At what point in time does § 2250(a) speak? Does it speak as of the time when SORNA took effect? Or does it speak as of the *463 time when the proscribed conduct occurs? Without knowing the point in time at which the law speaks, it is impossible to tell what is past and what is present or future.
The unspoken premise of petitioner’s argument is that § 2250(a) speaks as of the time when it became law. And if that premise is accepted, it follows that the use of the present tense in § 2250(a)(2)(B) means that the requisite interstate travel must occur after, not before, SORNA took effect. Petitioner’s premise, however, flies in the face of the widely accepted modern legislative drafting convention that a law should not be read to speak as of the date of enactment. The United States Senate Legislative Drafting Manual directly addresses this point: “A legislative provision speaks as of any date on which it is read (rather than as of when drafted, enacted, or put into effect).” Senate Office of the Legislative Counsel, Legislative Drafting Manual § 103(a), p. 4 (1997) (emphasis added). The House Manual makes the same point:
“Your draft should be a movable feast — that is, it speaks as of whatever time it is being read (rather than as of when drafted, enacted, or put into effect).” House Legislative Counsel’s Manual on Drafting Style, HLC No. 104-1, § 102(c), p. 2 (1995).
In accordance with this convention, modern legislative drafting manuals teach that, except in unusual circumstances, all laws, including penal statutes, should be written in the present tense. The Senate Manual, supra, § 103(a), at 4, states: “Always use the present tense unless the provision addresses only the past, the future, or a sequence of events that requires use of a different tense.” Similarly, the House Manual, supra, § 102(c), at 2, advises: “Stay in the Present. — Whenever possible, use the present tense (rather than the past or future).” Numerous state legislative drafting manuals and other similar handbooks hammer home this same point. See, e. g., Colorado Legislative *464 Drafting Manual, p. 5-15 (2009), online at http://www.state. co.us/gov_dir/leg_dir/olls/LDM/OLLS_Drafting_Manual.pdf (all Internet materials as visited May 26, 2010, and available in Clerk of Court’s case file) (“Provisions should generally be stated in the present tense”); Hawaii Legislative Drafting Manual 21 (K. Takayama rev. 9th ed. 2007 reprint), online at http://www.state.hi.us/lrb/rpts96/dftman.pdf (“Use the present tense and indicative mood”); Legislative Research Comm’n, Bill Drafting Manual for the Kentucky General Assembly §304, p. 19 (rev. 14th ed. 2004) (“Use the present tense and the indicative mood”); Maine Legislative Drafting Manual 78 (rev. 2009) (“Laws are meant to be of continuing application and should be written in the present tense”); Massachusetts General Court, Legislative Research and Drafting Manual 16 (5th ed. 2010) (“Use the present tense and the indicative mood”); New Mexico Legislative Council Service, Legislative Drafting Manual 105 (2004 update) (“Statutes are written in the present tense, not the future tense”); Texas Legislative Council Drafting Manual §7.35, p. Ill (2008) (“Use present tense whenever possible”); West 'Virginia Legislature Bill Drafting Manual 22 (rev. 2006), online at http://www.legis.state.wv.us/joint/Bill_Drafting/ Drafting_Manual.pdf (“Avoid future tense (will be paid) and future perfect tense (will have been paid). Use present tense (is paid)”); see also Ohio Legislative Service Comm’n, Rule Drafting Manual 47 (4th ed. 2006), online at http:// www.lsc.state.oh.us/rules/rdm06_06.pdf (“Use present tense. The majority of rules have a continuing effect in that they apply over time. They speak at the time of reading, not merely at the time of their adoption. The present tense therefore includes the Mure tense”).
Once it is recognized that § 2250(a) should not be read as speaking as of the date when SORNA went into effect, petitioner’s argument about the use of the present tense collapses. In accordance with current drafting conventions, § 2250(a) speaks, not as of the time when the law went into *465 effect, but as of the time when the first act necessary for conviction is committed. In the case of § 2250(a), that occurs when an individual is convicted of a qualifying sex offense, for it is that act that triggers the requirement to register under SORNA.[4] For present purposes, we must proceed on the assumption that this event may have occurred before SORNA was enacted. Viewed as of the time when such a pre-SORNA conviction takes place, every subsequent act, including movement from State to State, occurs in the future and is thus properly described using the present tense. Accordingly, § 2250(a)(2)(B)’s use of the present tense (“travels”) supports the application of the statute to a sex offender, like petitioner, who moved from State to State after conviction but before SORNA went into effect.[5]
*466 C
Petitioner’s present-tense argument is particularly perverse in light of the context in which § 2250(a) was adopted. When SORNA was enacted, Congress elected not to decide for itself whether the Act’s registration requirements — and thus §2250(a)’s criminal penalties — would apply to persons who had been convicted of qualifying sex offenses before SORNA took effect. Instead, Congress delegated to the Attorney General the authority to decide that question. See § 113(d), 120 Stat. 594, 42 U. S. C. § 16913(d) (“The Attorney General shall have the authority to specify the applicability of the requirements of [Title I of SORNA] to sex offenders convicted before the enactment of this Act”).[6] Pursuant to this delegation, the Attorney General in 2007 issued an interim rule providing that SORNA applies to preenactment convictions. 72 Fed. Reg. 8897 (codified at 28 CFR § 72.3).[7]
*467 Petitioner contends that, if Congress had wanted to make § 2250(a) applicable to sex offenders who traveled in interstate commerce before SORNA took effect, Congress could have referred in § 2250(a)(2)(B) to a person who “traveled,” “has traveled,” or, at the time of the statute's enactment, “had traveled” in interstate commerce. Brief for Petitioner 19 (internal quotation marks omitted). Any such phrasing, however, would have strongly suggested that § 2250(a) reaches persons with pre-SORNA sex-offense convictions— the very question that Congress chose not to decide but instead to leave for the Attorney General.
A brief explanation is needed to make clear why wording § 2250(a)(2)(B) in the past tense (or the present perfect or past perfect tense) would have had such an effect. The Court and I agree that § 2250(a) applies only to persons who travel in interstate commerce after they are convicted of a qualifying sex offense. See ante, at 446; infra, at 469. Therefore, if § 2250(a) had been phrased in the past tense (or the present perfect or past perfect tense), it would seem necessarily to follow that the provision reaches pre-SORNA convictions. By using the present tense, Congress remained neutral on the question whether the Act reaches those with pre-SORNA sex-offense convictions and left that question open for the Attorney General.
The conclusion that § 2250(a)(2)(B) embraces pre-SORNA travel is reinforced by the presence of quite a few other SORNA provisions that plainly use the present tense to refer to events that, as a result of the Attorney General’s regulation, may have occurred before SORNA took effect. For example, an individual may qualify as a “tier IT sex offender” under the Act if, among other things, his sex offense “involves ... (i) use of a minor in a sexual performance; (ii) solicitation of a minor to practice prostitution; or (iii) production or distribution of child pornography.” 42 U. S. C. *468 §16911(3)(B) (emphasis added); see also §16911(4)(B) (offense “involves kidnapping of a minor” (emphasis added)); § 16911(7) (offense “involves” certain specified conduct). Similarly, a sex offender can qualify as a “tier II sex offender” if his sex offense “occurs after the offender becomes a tier I sex offender.” § 16911(3)(C) (emphasis added); see also § 16911(4)(C) (offense “occurs after the offender becomes a tier II sex offender” (emphasis added)). A juvenile adjudication, moreover, may qualify as a conviction for purposes of the Act only if, among other things, the “offender is 14 years of age or older at the time of the offense.” §16911(8) (emphasis added).[8]
Congress cast all of these provisions in the present tense, but now that the Attorney General has made SORNA applicable to individuals with pre-SORNA sex-offense convictions, all of these provisions must necessarily be interpreted as embracing preenactment conduct.
*469 II
The Court’s second reason for holding that 18 U. S. C. § 2250(a) reaches only post-SORNA travel is based on the sequence in which the elements of § 2250(a) are listed. The Court concludes (and I agree) that the first listed element (subsection (a)(1) (“is required to register under the Sex Offender Registration and Notification Act”)) cannot have been violated until the Act took effect. The Court then reasons that the third listed element (subsection (a)(2)(B) (“travels in interstate ... commerce”)) must be violated after the first. See ante, at 446. The Court explains: “Persons convicted of sex offenses under state law who fail to register in their State of conviction would otherwise be subject to federal prosecution under §2250 even if they had not left the State after being convicted — an illogical result given the absence of any obvious federal interest in punishing such state offenders.” Ibid. In other words, the Court reasons that it would be illogical to interpret the statute as reaching a person who first moves from State A to State B, then commits and is convicted of a qualifying sex offense in State B, and subsequently, upon release from custody in State B, fails to register as required under the law of that State.
I agree with the Court that there is a good argument that § 2250(a) should not be read to apply to such a case, where there is little if any connection between the offender’s prior interstate movement and his subsequent failure to register. In the two hypothetical cases discussed at the beginning of this opinion, the offender’s interstate movement seriously frustrated the ability of the law enforcement authorities in his new State (State B) to enforce its registration requirements. By contrast, where an offender’s interstate movement predates his sex offense and conviction, his interstate movement has little if any effect on the ability of the law enforcement authorities in State B to enforce that State’s laws. When a sex offender is released from custody in State B, the ability of the State B authorities to enforce that *470 State’s registration laws would appear to be the same regardless of whether that offender had lived his entire life in that State or had moved to the State prior to committing the offense for which he was convicted. Accordingly, it can be argued that Congress cannot have meant to reach this situation. As the Seventh Circuit put it, “[s]ince the statutory aim is to prevent a convicted sex offender from circumventing registration by leaving the state in which he is registered, it can be argued that the travel must postdate the conviction.” United States v. Dixon, 551 F. 3d 578, 582 (2008). It can also be argued that a broader construction would mean that Congress exceeded its authority under the Commerce Clause. See Brief for National Association of Criminal Defense Lawyers as Amicus Curiae 16-17.
What the Court’s argument shows, however, is not that the interstate travel required by § 2250(a) must come after SORNA’s enactment. Rather, what the Court’s argument suggests is that the interstate travel must come after the sex-offense conviction. And because, under the regulation promulgated by the Attorney General, § 2250(a) reaches pre-SORNA convictions, this argument does not support the Court’s conclusion that the interstate travel needed under § 2250(a) must have occurred after SORNA was enacted.
Ill
When an interpretation of a statutory text leads to a result that makes no sense, a court should at a minimum go back and verify that the textual analysis is correct. Here, not only are the Court’s textual arguments unsound for the reasons explained above, but the indefensible results produced by the Court’s interpretation should have led the Court to doublecheck its textual analysis.
SORNA was a response to a dangerous gap in the then-existing sex-offender-registration laws. In the years prior to SORNA’s enactment, the Nation had been shocked by cases in which children had been raped and murdered by *471 persons who, unbeknownst to their neighbors or the police, were convicted sex offenders. In response, Congress and state legislatures passed laws requiring the registration of sex offenders. See Smith v. Doe, 538 U. S. 84, 89-90 (2003); Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Tit. 17,108 Stat. 2038; Megan’s Law, 110 Stat. 1345. Despite those efforts, by 2006 an estimated 100,000 convicted sex offenders — nearly one-fifth of the Nation’s total sex-offender population — remained unregistered. H. R. Rep. No. 109-218, pt. 1, p. 26 (2005). The principal problem, a House Report determined, was that sex offenders commonly moved from one State to another and then failed to register in their new State of residence. Ibid. In other words, interstate travel was dangerously undermining the effectiveness of state sex-offender-registration laws.
Interpreting § 2250(a)(2)(B) to reach only postenactment travel severely impairs §2250(a)’s effectiveness. As interpreted by the Court, § 2250(a) applies to a pre-SORNA sex offender only if that offender traveled in interstate commerce at some point after SORNA’s enactment. As the examples discussed at the beginning of this opinion illustrate, however, there is no apparent reason why Congress would have wanted to impose such a requirement. To the contrary, under the Court’s interpretation, the many sex offenders who had managed to avoid pre-existing registration regimes, mainly by moving from one State to another before SORNA’s enactment, are placed beyond the reach of the federal criminal laws. It surely better serves the enforcement of SORNA’s registration requirements to apply § 2250(a) to all pre-SORNA sex offenders, regardless of whether their interstate travel occurred before or after the statute’s enactment.
The Court provides only a weak defense of the result its analysis produces. The Court suggests that enhanced information collection and sharing and state enforcement of registration laws were the sole weapons that Congress chose to *472 wield in order to deal with those convicted sex offenders whose whereabouts were unknown when SORNA was passed. See ante, at 454-456. I see no basis for this conclusion. There can be no dispute that the enactment of § 2250(a) shows that Congress did not think these measures were sufficient to deal with persons who have qualifying sex-offense convictions and who move from State to State after SORNA’s enactment. And in light of that congressional judgment, is there any plausible reason to think that Congress concluded that these same measures would be adequate for those with qualifying sex-offense convictions who had already disappeared at the time of SORNA’s enactment? [9] The Court has no answer, and I submit that there is none.[10]
*473 IV
For these reasons, I would affirm the decision of the Seventh Circuit, and I therefore respectfully dissent.

 Section 2250(a) also applies to persons with federal sex-offense convictions, those who travel in foreign commerce, and those who enter, leave, or reside in Indian country. For convenience, I will refer in this opinion solely to interstate travel.

 The Court holds only that § 2250(a)(2)(B) does not apply to a person who moved in interstate commerce before SORNA took effect. The Court does not address the separate question whether § 2250(a) may validly be applied to a person who was convicted of a qualifying offense before SORNA was enacted. Congress delegated to the Attorney General the authority to decide whether the Act’s registration requirements — and thus §2250(a)’s criminal penalties — should apply to persons in the latter category, 42 U. S. C. § 16913(d), and the Attorney General has promulgated a regulation providing that they do, 72 Fed. Reg. 8897 (2007) (codified at 28 CFR § 72.3 (2009)). Because the Court does not address the validity of this regulation, I proceed on the assumption that 18 U. S. C. § 2250(a) reaches persons with pre-SORNA sex-offense convictions.

 See n. 2, supra.

 Under 42 U. S. C. § 16913, a “sex offender” is required to register, and the term “sex offender” is defined as a person who was convicted of a “sex offense.” § 16911(1). The Court relies on the artificial argument that the first act necessary for conviction under 18 U. S. C. § 2250(a) is the failure to register, ante, at 446-447, and n. 4, but in real-world terms the first necessary act is plainly the commission of a qualifying offense.

 Contrary to the Court’s interpretation, see ante, at 448-449, Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U. S. 49 (1987), does not support petitioner’s argument. Gwaltney involved a civil action brought under § 505 of the Clean Water Act, 33 U. S. C. § 1365(a), which authorizes suit against any person “alleged to be in violation” of a National Pollutant Discharge Elimination System permit. In Gwaltney, the permit holder had violated its permit between 1981 and 1984, but the permit holder claimed that it had ceased all violations by the time the suit was filed. 484 U. S., at 53-55. This Court held that the phrase “alleged to be in violation” showed that the provision was meant to apply only where an ongoing violation is alleged. Id., at 59.
The provision at issue in Gwaltney differs from § 2250(a) in that it specifies the relevant temporal point of reference, namely, the point in time when the allegation of an ongoing violation is made. Section 2250(a) contains no similar specification. Moreover, the Gwaltney Court did not read the provision at issue there as speaking at the time when the provision was enacted. As noted above, however, the silent premise of petitioner’s argument is that § 2250(a) must be read as speaking as of the time of SORNA’s enactment.

 To be sure, at least two Courts of Appeals have held that SORNA’s registration requirements apply by the Act’s own terms to those individuals with sex-offense convictions that predate SORNA’s enactment. See United States v. Hinckley, 550 F. 3d 926, 929-935 (CA10 2008); United States v. May, 535 F. 3d 912, 918-919 (CA8 2008). Other Courts of Appeals, however, have disagreed, reasoning that SORNA’s explicit grant of authority to the Attorney General to determine the Act’s applicability to offenders with pre-SORNA convictions implies that the Act would not apply to those sex offenders absent the Attorney General’s regulation. See,e. g., United States v. Cain, 583 F. 3d 408, 414-415, 419 (CA6 2009); United States v. Hatcher, 560 F. 3d 222, 226-229 (CA4 2009); United States v. Dixon, 551 F. 3d 578, 585 (CA7 2008) (case below); United States v. Madera, 528 F. 3d 852, 856-859 (CA11 2008) (per curiam). Those Courts of Appeals in the latter group, in my view, have the better of the argument. Section 113(d) of SORNA delegates to the Attorney General the “authority to specify the applicability of the requirements of [Title I of SORNA] to sex offenders convicted before the enactment of [the] Act.” 120 Stat. 594,42 U. S. C. § 16913(d). The clear negative implication of that delegation is that, without such a determination by the Attorney General, the Act would not apply to those with pre-SORNA sex-offense convictions.

 Although not controlling, it is worth noting that one of the two examples the Attorney General included in his February 2007 rule contemplated that pre-SORNA travel would be sufficient to satisfy *467 § 2250(a)(2)(B)’s interstate-travel requirement. See 28 CFR §72.3 (Example 2).

 That many of these provisions rely on § 16911(l)’s definition of the term “sex offender” changes nothing. See ante, at 450-451, n. 6. Had the Attorney General not exercised his discretion to make SORNA’s registration requirements applicable to those with pre-SORNA sex-offense convictions, all of these provisions would have applied to only postenaetment conduct — notwithstanding § 16911(l)’s reference to “an individual who was convicted of a sex offense.” (Emphasis added.) But now that the Attorney General has so exercised his discretion, all of these present-tense-phrased provisions necessarily must be interpreted as reaching preenaetment conduct. The same conclusion should follow with respect to 18 U. S. C. § 2250(a)(2)(B).
Additionally, I do not suggest that the “default” rule is that provisions written in the present tense apply to past conduct. To the contrary, I had thought it an uncontroversial proposition of statutory interpretation that statutes must be interpreted in context. See, e. g., United States Nat. Bank of Ore. v. Independent Ins. Agents of America, Inc., 508 U. S. 439, 455 (1993); see also 1 U. S. C. § 1. And when § 2250(a) is read with an eye to the context in which SORNA was enacted, it becomes quite clear that § 2250(a)(2)(B) should be interpreted as reaching preenactment travel. Giving effect to those contextual indicators, moreover, does not offend the presumption against retroactivity or the Ex Post Facto Clause. See n. 10, infra.

 Contrary to the Court’s suggestion, see ante, at 455, n. 9, it is no answer to point to Congress’ decision to delegate to the Attorney General the responsibility of deciding whether § 2250(a) should reach persons with pre-SORNA sex-offense convictions. Of course, that delegation created the possibility that the Attorney General would decide that § 2250(a) should not apply to such offenders, and if he had so decided it would likely follow that post-SORNA interstate travel would also be required. (This is the case because, as previously explained, there is a strong argument that § 2250(a) requires interstate travel that comes after a qualifying conviction.)
Now that the Attorney General has decided that § 2250(a) reaches persons with pre-SORNA sex-offense convictions, however, the relevant question is this: Is there any reason why Congress might have wanted to draw a distinction between (1) persons with pre-SORNA convictions and pre-SORNA travel and (2) persons with pre-SORNA convictions and post-SORNA travel? And to this question, the Court offers no plausible answer.

 Petitioner makes the additional argument that interpreting § 2250(a) (2)(B) to reach preenactment travel renders the statute an unlawful ex post facto law. See U. S. Const., Art. I, § 9, el. 8. Petitioner remained unregistered in Indiana five months after the promulgation of the regulation making SORNA applicable to persons with pre-SORNA sex-offense convictions. For essentially the reasons explained by the Court of Appeals, see 551 F. 3d, at 585-587, I would reject petitioner’s ex post facto argument.