In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1807

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

TOMMY C. COX,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CR 925—**Samuel Der-Yeghiayan**, *Judge.*

ARGUED FEBRUARY 24, 2009—DECIDED AUGUST 18, 2009

Before ROVNER, WOOD, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* Tommy Cox was convicted of one count of knowingly transporting an individual under the age of 18 in interstate commerce with intent that the individual engage in prostitution, in violation of 18 U.S.C. § 2423(a), and one count of knowingly persuading, inducing, enticing, or coercing an individual to travel in interstate commerce to engage in prostitution, in violation of 18 U.S.C. § 2422(a). In addition, Cox

pleaded guilty prior to his trial to two counts of credit card fraud, in violation of 18 U.S.C. § 1029(a)(3). Cox now appeals. He asserts that the district court erred when it did not require the Government to prove for purposes of the § 2423(a) charge that Cox knew that the person he transported was under the age of 18. He also accuses the court of abusing its discretion by admitting evidence of his credit card fraud into the trial on the transportation conduct. We conclude that the district court correctly ruled that the Government need not prove in a prosecution under 18 U.S.C. § 2423(a) that the defendant knew that the person being transported was under the age of 18. Nor did the court abuse its discretion by admitting the evidence of Cox's credit card fraud into the trial on the 18 U.S.C. §§ 2423(a) and 2422(a) violations. We therefore affirm.

## I

On January 31, 2006, an employee of Expedia, the online travel company, contacted United States Secret Service Agent James Sams to report an unauthorized use of a credit card to rent hotel rooms at the Hyatt Regency Hotel in Chicago, Illinois. The rooms had been rented under the name of Andre Oby. By the time Agent Sams arrived at the hotel, Chicago police officers had detained Cox and removed a handful of credit cards from his possession: a Wachovia Visa Bucks card in the name of Carnell Johnson, an e-Trade debit card in the name of Tony M. Cox, a Western Union Mastercard in the name of Tommy Cox, and an Illinois I.D. card in the

name of Andre Oby. The police also seized a notebook with a number of names, addresses, and credit card numbers; the notebook included information about Andre Oby. Finally, the police found printouts of emails with credit card numbers on them; these were hidden between the mattress and frame of the bed in one of the hotel rooms.

Later investigations revealed that Cox was associated with a boy named Quantan Champion. At trial, Champion testified that he first met Cox on a telephone party line during 2005, when Champion was 16 years old. Later, Champion met Cox in person at a hotel party in Chicago. There Cox told him that he could make a lot of money as a prostitute; Cox volunteered to find customers for him. Champion testified that he "went along with it" because he had no money. Cox took nude and semi-nude pictures of Champion, decided how much Champion would charge for different sexual acts, and posted the pictures and prices on various internet websites. Champion said that if a person was interested in his services, the potential customer would contact Cox on his cell phone, and Cox would inform the customer of the location of the meeting, the services to be provided, and the amount to be charged. Champion testified that he engaged in the sexual services that he and Cox discussed and that he spilt the proceeds with Cox 50/50. Cox prostituted him on a daily basis during 2005 and 2006.

In the spring or early summer of 2006, Cox moved from Chicago to Atlanta. Initially, Cox did not take Champion with him. But later that fall, Cox returned to Chicago,

found Champion, and took him back to Atlanta. Champion testified that Cox continued to prostitute him in Atlanta, with Cox advertising Champion's services and prices, and arranging meetings just as he had in Chicago. Champion eventually returned to Chicago and spurned Cox's repeated attempts to get him to come back to Atlanta. After returning from Atlanta, Champion never prostituted himself again.

Following Cox's arrest, a grand jury issued a four-count indictment against him. Count I charged Cox with transporting a minor in interstate commerce with the intent that the minor engage in prostitution, in violation of 18 U.S.C. § 2423(a), and Count II charged Cox with persuading, inducing, enticing, or coercing an individual to travel in interstate commerce to engage in prostitution, in violation of 18 U.S.C. § 2422(a). Counts III and IV charged Cox with violating 18 U.S.C. § 1029(a)(3), based on his possession and use of credit cards and account numbers on or about January 15, 2006, and January 26, 2006. On October 23, 2007, Cox pleaded guilty to the credit card counts. The Government then filed two motions *in limine*. In the first, the Government sought a ruling that it did not have to prove that Cox knew that Champion was a minor in order to obtain a conviction under 18 U.S.C. § 2423(a). The second motion asked the court to rule that evidence of Cox's credit card fraud was admissible in the trial of Counts I and II because the credit card evidence was "inextricably intertwined" with the evidence of Cox's enticement and transportation of Champion.

On October 31, 2007, the district court granted both of the Government's motions. The court concluded that 18 U.S.C. § 2423(a) does not require the Government to prove that a defendant knew that the victim was under the age of 18. It also held that the evidence relating to Cox's credit card fraud was admissible in the trial of his enticement and transportation activity because it was, as the Government argued, inextricably intertwined with the offense conduct, and because its probative value was not substantially outweighed by the danger of unfair prejudice. The court denied Cox's motion to reconsider on November 5, 2007, and on November 8, the jury returned a verdict of guilty on Counts I and II.

## II

Before turning to the merits of Cox's appeal, we need to address a matter that arose immediately before oral argument. On February 19, 2009, Cox, acting *pro se*, filed a document entitled "motion to file supplemental brief." The motion questioned the adequacy of the representation that his appointed counsel, Bradley Weidenhammer, was furnishing. Cox questioned Weidenhammer's decision not to file a supplemental brief challenging Cox's sentence as unreasonable. We denied Cox's *pro se* motion. On the eve of oral argument, Weidenhammer learned of Cox's motion and filed an emergency motion to delay the argument, which we also denied. At the start of oral argument Weidenhammer told us that there might be a conflict between him and Cox and then moved on to the merits of his argument. Shortly after oral argument, Cox filed a *pro se* motion to substitute counsel, which was

withdrawn two days later in another motion written by Weidenhammer. According to this most recent motion, any issue between Cox and Weidenhammer was the result of a misunderstanding that had been resolved to Cox's satisfaction.

For the sake of thoroughness, however, it bears mentioning that we see no reason to relieve Weidenhammer from this case. Cox has no right to raise substantive issues while he is represented, and he is foolish if he thinks that he ought to complain about constitutional ineffectiveness of counsel on direct appeal. Without reaching any issue related to the adequacy of Cox's representation, it is clear to us that nothing in Cox's initial *pro se* filing, strictly from the point of view of legal ethics, compels Weidenhammer to do any more than bring this issue to the court's attention, which he has done. Weidenhammer has abided by rules governing communication with his client, N. D. IL. R. 83.51.4, the manner in which strategic decisions should be made, Rule 83.51.2, and termination of the attorney client relationship, Rule 83.51.16, and he has adhered to the spirit of the rule calling for candor before a tribunal, Rule 83.53.3. We see no conflict that requires him to step aside.

## A

Turning to the arguments that are properly before us, the first issue is Cox's assertion that § 2423(a) requires the Government to prove that a defendant knew that the victim was under the age of 18. Section 2423(a) reads as follows:

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2423(a). Cox argues that the plain language of the statute makes knowledge of the transportee's age an element of the offense, because the adverb "knowingly" modifies not only the transitive verb "transports" but also the verb's direct object. Therefore, according to Cox, "knowingly" also reaches the object of the phrase, "an individual who has not attained the age of 18 years."

While the question whether knowledge of a victim's minor status is an element of the § 2423(a) offense is a question of first impression for this court, at least four of our sister circuits have faced this issue and all have held that it is not. See *United States v. Jones*, 471 F.3d 535, 538-39 (4th Cir. 2006); *United States v. Griffith*, 284 F.3d 338, 350-51 (2d Cir. 2002); *United States v. Taylor*, 239 F.3d 994, 996 (9th Cir. 2001); *United States v. Hamilton*, 456 F.2d 171, 173 (3d Cir. 1972). Today we join the Second, Third, Fourth, and Ninth Circuits and hold that § 2423(a) does not require that the Government prove that a defendant knew his victim was a minor. Despite Cox's grammatical arguments, in our view the most natural reading of § 2423(a) is that the adverb "knowingly" modifies only

the verb "transports" and does not extend to the victim's minor status. To adopt Cox's argument would mean that we would have to read the adverb "knowingly" to modify not only the verb "transports" but also the noun and the dependent clause. As the Fourth Circuit noted, this would be a grammatically absurd result. *Jones*, 471 F.3d at 539.

Cox argues that a reading that does not apply "knowingly" to the minor status of the victim renders the presence of the word "knowingly" redundant. When we examine the related provision of 18 U.S.C. § 2421, however, we can see that this argument does not work. Section 2421 is entitled "Transportation generally" and says:

> Whoever knowingly transports any individual in interstate or foreign commerce . . . with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2421. Section 2421 is virtually identical to § 2423(a) but for the age element in the latter and the limit on terms of imprisonment under the former. The only reasonable reading of § 2421 is one under which the adverb "knowingly" acts only on the verb "transports" and not on the noun "individual." There is no good reason to read § 2423(a) differently. And § 2421 puts to rest any argument that the word "knowingly" is redundant unless it reaches the dependent clause in

§ 2423(a). See *Jones*, 471 F.3d at 539. Given that § 2421 already makes it unlawful to transport any individual in interstate commerce for the purpose of prostitution, the best reading of § 2423(a) is that the inclusion of age was intended to create an aggravating factor for penological purposes, in order to provide greater protection against the sexual exploitation of minors. *Taylor*, 239 F.3d at 997.

That the illicit conduct in § 2423(a) is already unlawful under § 2421 is what distinguishes the Supreme Court's holding in *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994). In *X-Citement Video*, the Court held that 18 U.S.C. § 2252, which prohibits knowingly transporting, shipping, receiving, distributing, or reproducing a visual depiction of a minor engaging in sexually explicit conduct, contains a scienter requirement for age given that "the age of the performers is the crucial element separating legal innocence from wrongful conduct." 513 U.S. at 72-73. Here, however, the conduct prohibited by § 2423(a) is already unlawful under § 2421, and a defendant is "already on notice that he is committing a crime when he transports an individual of any age in interstate commerce for the purpose of prostitution." *Griffith*, 284 F.3d at 351. Since the Court's decision in *X-Citement Video* was directed at "awareness of the elements that define circumstances upon which criminality turns," *Jones*, 471 F.3d at 541 (internal quotation marks omitted), and since age in § 2423(a) is not a factor that distinguishes criminal behavior from innocent conduct (as it was in the statute at issue in *X-Citement Video*), § 2423(a) is best read as

imposing a greater penalty on those persons who transport underage victims in interstate commerce for the purpose of prostitution.

This reading is consistent with congressional intent that minors need special protection against sexual exploitation. See *Taylor*, 239 F.3d at 997 (citing H.R. REP. NO. 105-557 (1998), *as reprinted in* 1998 U.S.C.C.A.N. 678). It seems implausible that Congress would want it to be harder to prove a violation of § 2423(a) than of § 2421, when the purpose of the former provision is to provide heightened protection for minors against sexual exploitation. See *Jones*, 471 F.3d at 539. This reading of § 2423(a) is also consistent with our recognition that a statutory *mens rea* requirement does not necessarily apply even to each element of an offense. For example, we have held that the Government need not prove that the defendant knew her victim was a minor in order to obtain a conviction under 21 U.S.C. § 861(a)(1). *United States v. Frazier*, 213 F.3d 409, 418-19 (7th Cir. 2000). Similarly, we have held that for purposes of § 3B1.4 of the Sentencing Guidelines, the Government is not required to prove a defendant's knowledge of a minor's age. See *United States v. Ceballos*, 302 F.3d 679, 698 (7th Cir. 2002).

We are aware that the Supreme Court has recently said that, as a matter of English grammar and criminal statutory interpretation, " 'knowingly' is naturally read as applying to all the subsequently listed elements of the crime." *Flores-Figueroa v. United States*, 129 S. Ct. 1886, 1890-91 (2009). Facing a grammatical construction similar to that which we consider here, the Court concluded that

"listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence." *Id.* at 1890. Accordingly, the Court held that to be sentenced under 18 U.S.C. § 1028A(a)(1), which applies to a person who (while committing other enumerated crimes) "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person," a person must have known that the "means of identification" they possessed belonged to "another person." *Flores-Figueroa*, 129 S. Ct. at 1888. But the Court did not establish a rule for all circumstances, and *Flores-Figueroa* does not compel an interpretation of § 2423(a) different from the one that we describe above. The *Flores-Figueroa* Court made clear, pointing to a concurring opinion by Justice Alito, that "the inquiry into a sentence's meaning is a contextual one," and that a "special context" might call for a different statutory interpretation. *Id.* at 1891. Indeed, Justice Alito's concurring opinion pointed to those decisions of the courts of appeals that have interpreted § 2423(a) not to require knowledge of the victim's age as a context in which departure from the Court's holding in *Flores-Figueroa* might be appropriate. *Id.* at 1895-96 (Alito, J., concurring). We read the Court's decision in *Flores-Figueroa* as consistent with, and perhaps calling for, the interpretation of § 2423(a) that we settle on here.

We conclude, therefore, that the district court correctly held that for purposes § 2423(a) the Government need not prove that Cox knew that Champion was a minor.

B

Cox next argues that the district court abused its discretion by admitting at trial evidence of his credit card fraud—that is, the conduct charged under Counts III and IV of the indictment to which he had pleaded guilty. The court concluded that this was not inadmissible "other crimes" evidence under FED. R. EVID. 404(b).

Rule 404(b) begins with the general statement that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." This court has long held that Rule 404(b) aims to guard against the use of prior bad acts to show general bad character, because that kind of evidence would tend to inflict more unfair prejudice than provide truthful information. *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002). For that reason, we have consistently held that evidence of acts that are closely related to the crime for which a defendant is on trial is different. That kind of evidence is admissible, as long as the relation is close enough to satisfy the general relevancy standards of Rule 401 and there is no other reason to exclude it (including under Rule 403, because the prejudicial effects outweigh the probative value). Cases speak awkwardly of evidence that is "inextricably intertwined" with the charged crime, but what they really mean is that the evidence is relevant and is not being used solely to prove "the character of a person in order to show action in conformity therewith." Rule 404(b). If prior bad acts are relevant for other reasons,

such as a tendency to "complete the story of the crime on trial; . . . or they are so blended or connected that they incidentally involve, explain the circumstances surrounding, or tend to prove any element of, the charged crime," *Senffner*, 280 F.3d at 764, the evidence is not excludable under Rule 404(b).

The core of Cox's argument is that the evidence of his credit card fraud had nothing to do with his transportation crime; instead, he says, it was "gratuitous, tangential . . ., used by the government for no purpose other than to characterize Mr. Cox as a criminal." We are unpersuaded. Cox's theory of defense was that he was not a pimp, as the Government had charged. To support that theory, he argued that he had little or no money, which he apparently thought indicated that he could not be a pimp. Cox's attorney at trial announced in his opening that

> Tommy did not have big bank accounts full of money. Tommy did not drive a fancy car. In fact, I don't think he had a car. Tommy did not wear a fur coat and a big fur hat. Tommy was broke. Tommy at times was evicted from his home and so he had to live with his mom or a friend. Please picture in your mind that lifestyle.

Evidence of Cox's credit card fraud was essential for the Government both to rebut Cox's defense and to buttress its theory that Cox was a pimp who hosted hotel "parties" for the purpose of prostitution. The evidence showed that Cox had the means to pay for the hotel gatherings at which he promoted his prostitution business and, specifically, Champion's services. The

credit card fraud was an essential part of his overall scheme, as was his transportation of Champion to continue the business in Atlanta. We conclude that the district court did not abuse its discretion by admitting the evidence.

The judgment of the district court is therefore AFFIRMED.