In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2411

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ISAAC VASQUEZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cr-00565-1—**Charles R. Norgle, Sr.**, *Judge.*

ARGUED JANUARY 13, 2010—DECIDED JULY 1, 2010

Before BAUER, MANION and TINDER, *Circuit Judges.*

BAUER, *Circuit Judge.* Issac Vasquez appeals his conviction for knowingly failing to register as a sex offender after traveling in interstate commerce, in violation of the Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. § 2250(a). We affirm.

## I. BACKGROUND

In October 1998, Isaac Vasquez pleaded guilty to Predatory Criminal Sexual Assault, Victim Under the Age of 13 in the Circuit Court of Cook County, Illinois and was sentenced to six years' imprisonment in the Illinois Department of Corrections (IDOC). This conviction required him to register as a sex offender under the Illinois Sex Offender Registration Act.

After initially registering under the Illinois law, he moved within Chicago but failed to report this change of address as required under Illinois law. After being charged, Vasquez pleaded guilty to Failure to Report a Change of Address and was sentenced to one year of imprisonment. Thereafter, Vasquez signed a notification form acknowledging that he had been advised of his duty to register as a sex offender under the Illinois Sex Offender Registration Act, that he understood this duty, and that his failure to register would constitute a criminal offense under Illinois law.

After being released on parole on March 15, 2005, Vasquez disappeared from where he was placed by Illinois authorities and never returned to the parole office or any other Illinois law enforcement agency as required by the conditions of his parole. On or about March 17, 2005, Illinois issued a warrant for his arrest.

On April 11, 2007, Vasquez was present in Illinois. On July 3, 2007, Vasquez was found in Los Angeles County, California, where he was taken into custody by the United States Marshals Service. After his release from IDOC custody on parole and until the time of his arrest

in Los Angeles, California on July 3, 2007, Vasquez failed to register as a sex offender in Illinois, California, or any other state.

Thereafter, Vasquez was indicted for knowingly failing to register as a sex offender under SORNA. After the district court denied Vasquez's motion to dismiss the indictment, the case proceeded to a bench trial on stipulated facts. Vasquez stipulated that his prior sex conviction required him to register under SORNA. After denying Vasquez's motion for acquittal, the district court convicted and sentenced him to a prison term of twenty-seven months, a supervised release term of three years, and a $100 special assessment. Vasquez timely appealed.

## II. DISCUSSION

Congress enacted SORNA in 2006, which imposes a registration requirement on sex offenders, 42 U.S.C. § 16913, and a criminal penalty for failure to comply with the registration requirement, 18 U.S.C. § 2250(a). A "sex offender" is defined as any individual who is convicted of a sex offense under either state or federal law. 42 U.S.C. § 16911(1). Pursuant to SORNA, "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides." 42 U.S.C. § 16913(a). A sex offender must update his registration within three business days of a "change of name, residence, employment, or student status." 42 U.S.C. § 16913(c). A sex offender who does not comply with SORNA's obligations faces criminal punishment: "Who-

ever . . . is required to register under the [Act]; who "travels in interstate or foreign commerce"; and "knowingly fails to register or update a registration as required by the [Act]; shall be fined under this title or imprisoned not more than 10 years, or both." 18 U.S.C. § 2250(a).

On appeal, Vasquez does not dispute that more than three days had elapsed from the date he had most recently changed his address, requiring him to re-register. Further, Vasquez is not arguing a lack of notice of the statute; *United States v. Dixon* made clear that SORNA does not violate due process of law, even when there is no personal notice of the enactment or its requirements. 551 F.3d 578, 584 (7th Cir. 2008), *rev'd on other grounds sub nom. Carr v. United States,* No. 08-1301, 2010 WL 2160783, at *4 (U.S. June 1, 2010). Finally, Vasquez cannot contend that he traveled in interstate commerce prior to SORNA's effective date. *See Carr*, 2010 WL 2160783, at *4. But Vasquez contends that his conviction should be reversed because the government presented no evidence that he "knowingly" violated SORNA when he failed to register. In addition, Vasquez challenges the constitutionality of SORNA and argues that it violates the Commerce Clause because it impermissibly regulates purely local, non-economic activity and because it does not require any nexus between a defendant's travel in interstate commerce and a defendant's failure to register. We review both the denial of a judgment of acquittal and the constitutional challenges under the Commerce Clause de novo. *United States v. Moss*, 513 F.3d 727, 733 (7th Cir. 2008); *United States v. Klinzing*, 315 F.3d 803, 806 (7th Cir. 2003).

### A. "Knowingly" Failing to Register

Vasquez argues that SORNA requires proof that a defendant had specific knowledge that he was required to register under SORNA. Relying upon *Flores-Figueroa v. United States*, 129 S. Ct. 1886, 1890 (2009), Vasquez maintains that as a matter of ordinary English grammar, the word "knowingly" in a statute applies to every subsequently listed element of the crime. In *Flores-Figueroa*, the Supreme Court held that, in order to convict a defendant of aggravated identity theft for "knowingly transfer[ring], possess[ing], or us[ing], without lawful authority, a means of identification of another person," the government must prove that defendant *knew* that the "means of identification" he or she unlawfully transferred, possessed, or used did, in fact, belong to another person. 129 S. Ct. at 1893 (emphasis added). Accordingly, Vasquez asserts that the government cannot convict him, absent proof that he *knew* that SORNA required him to register. And Vasquez maintains that the stipulated facts contain no such proof.

This court has not previously addressed whether SORNA requires a defendant to have specific knowledge of his federal obligation to register. However, at least four of our sister circuits have faced this issue, and all have held that knowledge of the federal obligation under SORNA is not required. *See United States v. Gould*, 568 F.3d 459, 468 (4th Cir. 2009); *United States v. Whaley*, 577 F.3d 254, 262 (5th Cir. 2009); *United States v. Baccam*, 562 F.3d 1197, 1199-1200 (8th Cir. 2009); *United States v. Griffey*, 589 F.3d 1363, 1367 (11th Cir. 2009). Specifically, the

Eighth Circuit rejected the defendant's argument that he could not knowingly violate SORNA because he was not told of his specific registration obligations under the law. *Baccam*, 562 F.3d at 1199-1200. And the Eleventh Circuit affirmed a defendant's conviction, holding that SORNA did not require that a defendant specifically know that he was violating the statute, only that he "knowingly" violated a legal registration requirement upon relocating. *Griffey*, 589 F.3d at 1367.

We recently declined to extend the knowledge requirement to the age element in 18 U.S.C. § 2423(a), which prohibits "knowingly transport[ing] an individual who has not attained the age of 18 years in interstate or foreign commerce, . . . with intent that the individual engage in prostitution" *United States v. Cox*, 577 F.3d 833, 836 (7th Cir. 2009). *Cox* held that despite the grammatical arguments, the most natural reading of § 2423(a) is that the adverb "knowingly" modifies only the verb "transports" and does not extend to the victim's minor status. *Id*. Accordingly, while the victim's age is an element of the offense (i.e., the government must prove the victim is under eighteen), the defendant need not have knowledge of the victim's age. *Cox* noted a departure from *Flores-Figueroa* is appropriate in interpreting § 2423(a) to not require knowledge of the victim's age. *Cox*, 577 F.3d at 838 (citing *Flores-Figueroa*, 129 S. Ct. at 1895-96 (Alito, J., concurring)).

Today we join the Fourth, Fifth, Eighth, and Eleventh Circuits, (and echo our reasoning in *Cox*), and hold that SORNA merely requires that a defendant have knowl-

edge that he was required by law to register as a sex offender. The government need not prove that, in addition to being required to register under state law, a defendant must also know that registration is mandated by a federal statute. In this Court's view, *Flores-Figueroa* did not overrule the long line of cases that have defined the term "knowingly," when used in a criminal statute, to mean "that the defendant realized what he/she was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake or accident." *See* Fed. Crim. Jury Inst. of the Seventh Circuit 4.06 (1999). *See also Cox*, 577 F.3d at 838. To that end, a defendant can be convicted under SORNA if the government can prove that he knew he was required to register as a sex offender. To the extent that SORNA's registration requirements differ from state law requirements, we need not decide today whether a defendant would be in violation of SORNA if he complied with his state law registration obligations but not his federal registration obligations, when he had not been made aware of additional obligations under the federal statute.

Here, Vasquez stipulated that he was required to register as a sex offender, had previously faced jail time for failing to register, and had even signed a notification form acknowledging that he was required to register under state law. Vasquez would have known that his failure to register as a sex offender was in violation of state law. In short, we find beyond a reasonable doubt that Vasquez knowingly failed to register or update a registration, in violation of 18 U.S.C. § 2250(a).

### B.  Commerce Clause

Alternatively, Vasquez argues that Congress exceeded its authority under the Commerce Clause in enacting SORNA. First, he contends that 42 U.S.C. § 16913, SORNA's registration provision which requires every sex offender to register regardless of whether the offender traveled across state lines, is unconstitutional because Congress does not have the power to impose registration requirements on individual citizens convicted of purely intrastate offenses. Second, Vasquez contends that 18 U.S.C. § 2250(a), SORNA's criminal penalty for failing to register, is unconstitutional because the statute makes it a federal offense for an individual sex offender who travels in interstate commerce to knowingly fail to register, even when the interstate travel has no connection to the failure to register.

Congress' Commerce Clause power is derived from Article I, § 8 of the United States Constitution, which provides that Congress has the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. Congressional power under the Commerce Clause "is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution." *United States v. Schaffner*, 258 F.3d 675, 678 (7th Cir. 2001) (citing *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 196 (1824)). We need only ask whether Congress could have had a rational basis to support the exercise of its commerce power and whether the regulatory means chosen were reasonably adapted

to the end permitted by the Constitution. *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 258 (1964). Nevertheless, a court will not inevitably rubber stamp all congressional statutes as it is still the province of the courts to determine whether Congress has exceeded its enumerated powers. *United States v. Black*, 125 F.3d 454, 459 (7th Cir. 1997) (internal citations omitted).

There are three broad areas of activity that Congress may regulate under its commerce power: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce." *See United States v. Lopez*, 514 U.S. 549, 558-59 (1995) (internal citations omitted). In addition, Congress also has the ability "[t]o make all Laws which shall be necessary and proper" for the accomplishment of its Commerce Clause power. U.S. Const. art. I, § 8, cl. 18.

While this Court has not previously addressed Vasquez's arguments, our sister circuits have held the registration provisions and the penalty for failure to register do not exceed Congress' power under the Commerce Clause. *United States v. Guzman*, 591 F.3d 83, 90 (2d Cir. 2010); *Whaley*, 577 F.3d at 261; *United States v. Howell*, 552 F.3d 709, 717 (8th Cir. 2009); *United States v. Ambert*, 561 F.3d 1202, 1210 (11th Cir. 2009). Specifically, *Ambert* concluded that because § 2250 makes it a federal crime to fail to register as required under § 16913, only where the offender "travels in interstate or foreign com-

merce," or was convicted of a federal sex offense, the use of the channels and instrumentalities of interstate commerce is necessarily part of the commission of the targeted offense. 561 F.3d at 1211. *Ambert* reasoned that "channels" are the interstate transportation routes through which persons and goods move and that "instrumentalities" are the people and things themselves moving in commerce. 561 F.3d at 1210-11. Further, in concluding that § 16913 is an appropriate aid to the accomplishment of tracking the interstate movement, *Howell* stated:

> A narrow discussion which only analyzes § 16913 under the three categories of *Lopez* casts doubt on the constitutionality of § 16913 . . . because [o]n its face, § 16913 does not have a jurisdictional "hook" to fit under the first two prongs of *Lopez*, and there is little evidence in this record to show intrastate sex offender registration substantially affects interstate commerce. . . . However, an analysis of § 16913 under the broad authority granted to Congress through both the commerce clause and the enabling necessary and proper clause reveals the statute is constitutionality authorized.

552 F.3d at 715.

We find no reason to disagree with our sister circuits.

Here, the statutory aim of SORNA is to prevent a convicted sex offender from circumventing registration by leaving the state in which he is registered. Section 2250 only criminalizes a knowing failure to register when the sex offender is either required to register under federal

law or "travels in interstate or foreign commerce." Thus, a sequential reading of the statute "helps to assure a nexus between a defendant's interstate travel and his failure to register as a sex offender." *Carr*, 2010 WL 2160783, at *5.

Interstate travel inherently involves use of channels of interstate commerce and is properly subject to congressional regulation under the Commerce Clause. Moreover, *Lopez* explicitly acknowledges Congress' power to regulate persons traveling in interstate commerce. 514 U.S. at 558. Accordingly, section 2250 is a permissible exercise of congressional power under the Commerce Clause because the use of the channels and instrumentalities of interstate commerce is necessarily a part of the commission of the targeted offense. Vasquez, who had failed to register as a sex offender in Illinois, was undeniably a "person . . . in interstate commerce" when he moved from Illinois to California, and traveled to California via the "channels of interstate commerce."

Section 2250(a)'s failure to require a connection between the jurisdictional element of travel and the criminal act of failing to register is not fatal, as the Supreme Court determined the jurisdictional element of "in or affecting commerce" was satisfied by proof that a possessed firearm previously traveled at some time in interstate commerce. *Scarborough v. United States*, 431 U.S. 563, 577 (1977). In so doing, the Court rejected the defendant's assertion that the interstate travel of the firearm must be contemporaneous with the defendant's possession of it. *Id.* at 568-69. Similar to *Scarborough*,

"[t]he act of travel" is sufficient to bring a defendant's subsequent failure to register within Congress' power to regulate. *Carr*, 2010 WL 2160783, at \*9.

We conclude a rational basis existed under the Commerce Clause for Congress to enact § 2250.

And § 16913 is a logical way to help ensure that the government will more effectively be able to track sex offenders when they do cross state lines. To the extent that § 16913 regulates solely intrastate activity, the regulatory means chosen are "reasonably adapted" to the attainment of a legitimate end under the commerce power.

### III. CONCLUSION

For the reasons stated above, we AFFIRM the ruling of the district court.

MANION, *Circuit Judge*, dissenting. In reading the court's opinion and the recent Supreme Court case *Carr v. United States*, this fact cannot be lost: there are seemingly two statutes at issue here. There is § 2250 as we interpreted it in *United States v. Dixon*, and as the court continues to interpret it, and then there is § 2250 as the Supreme

Court interpreted it in *Carr*. That being said, I have two principal disagreements with the court's opinion. The first is that it gives *Carr* too limited a reading; the second is that its interpretation of § 2250 renders the statute constitutionally defective.

I.

After this case was argued, the Supreme Court handed down *Carr v. United States*, ___ S.Ct. ___, 2010 WL 2160783 (June 1, 2010)). In it, the Court overturned our previous interpretation of § 2250 in *United States v. Dixon*, 551 F.3d 578, 581 (7th Cir. 2008), *rev. sub nom. Carr v. United States*, ___ S.Ct. ___, 2010 WL 2160783 (June 1, 2010)). In that case, the defendant was convicted in Alabama of rape. In 2005, he moved to Indiana but didn't register as a sex offender, and he stayed under the radar until 2008, when he was arrested in a bar fight. After his arrest, the authorities learned he was a sex offender and wasn't registered in Indiana as required under SORNA, which was enacted in 2006.

He was charged with and convicted of violating § 2250. On appeal he challenged his conviction on various grounds, including the fact that using his pre-SORNA travel to convict him violated the *ex post facto* clause. Looking to the statute's text, we rejected his argument and read § 2250 to apply to a defendant's travel regardless of when it took place: "the statute does not require that the defendant's travel postdate the Act, any more than it requires that the conviction of the sex offense

that triggers the registration requirement postdate it." *Id.* at 582.

The Supreme Court disagreed. It noted that § 2250 has to be read sequentially, meaning the defendant has to have a duty to register under SORNA; he then has to travel; and his violation has to "culminat[e] in a post-SORNA failure to register." *Carr*, *supra* at *5. Ultimately, it avoided the *ex post facto* argument and held that § 2250 doesn't apply to pre-enactment travel. *Id.* at 11. But it didn't stop there. The Court also gave some additional commentary on § 2250 in the form of "considered dicta." *United States v. Bloom*, 149 F.3d 649, 653 (7th Cir. 1998).

In *Dixon* we noted that "[t]he evil at which [§ 2250] is aimed is that convicted sex offenders registered in one state might move to another state, fail to register there, and thus leave the public unprotected." *Dixon*, 551 F.3d at 582. We also analogized § 2250 to the felon-in-possession statute, noting it doesn't matter when the firearm passed state lines, the firearm's travel is not part of the harm; it is simply a jurisdictional hook. *Id.*

Again, the Supreme Court viewed § 2250 differently: "the proper analogy is not, as the Seventh Circuit suggested, between the travel of a sex offender and the movement of a firearm; it is between the sex offender who 'travels' and the convicted felon who 'possesses.'" *Carr*, *supra* at *9. It also disagreed with our position about the defendant's travel: the travel is not just "a jurisdictional predicate for § 2250, but it is also, like the act of possession, the very conduct at which Congress took aim." *Id.* In that way, it is not enough that a defendant

has traveled; he has to travel with a specific purpose because Congress has "subjected such offenders to federal criminal liability only when, after SORNA's enactment, they use the channels of interstate commerce in evading a State's reach." *Id.* at *8. Of course, if criminal liability *only* attaches when the travel is for such a purpose, then the showing of purpose and intent that the government must make is pivotal to the prosecution. The Supreme Court rested this reading of § 2250 on both SORNA's purpose and its structure: "Taking account of SORNA's overall structure, we have little reason to doubt that Congress intended §2250 to do exactly what it says: to subject to federal prosecution sex offenders who elude SORNA's registration requirements by traveling in interstate commerce." *Id.* at *10.

To be clear, no circuit court applying § 2250 has required the prosecution to prove the purpose of the defendant's interstate travel. This is probably because as it is written, the statute does not have any language to that effect. But the Supreme Court and the dissent saw eye-to-eye on this point: "I agree with the Court that there is a good argument that § 2250(a) should not be read to apply to such a case, where there is little if any connection between the offender's prior interstate movement and his subsequent failure to register." *Id.* at *16 (Alito, J., dissenting). It is clear that as far as the Supreme Court is concerned, under § 2250 the defendant's travel is not just a jurisdictional hook but part of the behavior Congress is regulating. And as an inferior court, we have to abide by it.

With that in mind, I have two points of disagreement with the court's application of *Carr*. First, even if *Carr* is limited to its basic holding, the facts we have here do not satisfy the statute. Second, if we give due deference to *Carr*'s "considered dicta," the facts we have here do not satisfy the statute because there is nothing in the record about why he traveled.

A.

The court and I agree that under *Carr* § 2250 has to be read sequentially. We just disagree on what that means. I think *Carr*'s sequential requirement means that the defendant has to have a duty to register under SORNA; he then has to travel; and his violation has to "culminat[e] in a post-SORNA failure to register." *Carr*, *supra* at *5. *Carr*'s sequential reading is not just a checklist for courts. It has a purpose: it assures that there is "a nexus between a defendant's interstate travel and his failure to register as a sex offender." *Id.* at *6. Thus, "[o]nce a person becomes subject to SORNA's registration requirements, . . . that person can be convicted under §2250 *if he thereafter travels and then fails to register*." *Id.* at 5 (emphasis added).

That is not what happened here. From the stipulated record, Vasquez's only duty to register as a sex offender arose in Illinois, which he failed to do. He didn't have a duty to register in California—under the sparse stipulated facts, we don't know how long he was there or that he had changed his residence or any status that

would compel him to register in California. 42 U.S.C. § 16913(c). So, his interstate travel did not culminate in his failure to register, nor was it in any way connected to his failure to register. Thus, it was not part of the harm that Congress was addressing, but a mere jurisdictional hook for making this a federal crime.

B.

I also disagree with the court's treatment of *Carr*. From the discussion above, it should be clear that the Supreme Court views § 2250 as requiring that some purpose to avoid, evade or elude registering attach to the defendant's travel; it is not enough that the defendant travels across state lines to run an errand or visit a friend. Here there is nothing in the record about why Vasquez traveled; all we know is that he did. Thus, without any proof concerning why Vasquez traveled to California, his conviction should be overturned.

II

This leads to my second principal disagreement with the court: interpreting the statute the way we did in *Dixon* and the way the court does here, without § 2250 regulating the defendant's travel, it is unconstitutional. Granted, that is a significant statement, in light of the fact that our sister circuits have applied the same analysis as the court and found that § 2250 is a legitimate exercise of the Commerce Clause. But against the backdrop of the traditional boundaries that have marked

Congress's power under the Commerce Clause and our interpretation of *Lopez*, it is clear that § 2250 is not a legitimate exercise of congressional power. And in an effort to uphold it, the court endorses a significant expansion of congressional power.

The plain language of § 2250, without applying *Carr*'s considered dicta, establishes that the statute only requires that a defendant have traveled interstate at some time. And limiting *Carr* only to its narrow holding, the time for the travel merely has to be after the statute was enacted. Under either application, the defendant's travel is not connected to him evading his duty to register under SORNA, and it is not what Congress is regulating.

While the distinction between a person who travels to evade registering and a person who travels and fails to register is semantically slight, it is constitutionally significant. To appreciate the significance of this distinction and understand the error in the court's Commerce Clause analysis, it is necessary to sketch the traditional limits of Congress's commerce power. For the past fifteen years, courts have based much of their understanding of the commerce power on the three categories articulated in *United States v. Lopez*, 514 U.S. 549, 558-59 (1995):

> First, Congress may regulate the use of the channels of interstate commerce. *See, e.g.*, *Darby*, 312 U.S. at 114; *Heart of Atlanta Motel*, *supra*, at 256 ("'[T]he authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has

been frequently sustained, and is no longer open to question.'" (quoting *Caminetti v. United States*, 242 U.S. 470, 491 (1917))). Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. *See, e.g.*, *Shreveport Rate Cases*, 234 U.S. 342 (1914); *Southern R. Co. v. United States*, 222 U.S. 20 (1911) (upholding amendments to Safety Appliance Act as applied to vehicles used in intrastate commerce); *Perez*, *supra*, at 150 ("[F]or example, the destruction of an aircraft (18 U.S.C. § 32), or . . . thefts from interstate shipments (18 U.S.C. § 659)").

We have interpreted each category with reference to the citations used. *United States v. Wilson*, 73 F.3d 675, 686-87 (7th Cir. 1995).

A.

In support of the first *Lopez* category that "Congress may regulate the use of the channels of interstate commerce," *Lopez* cites three cases: *United States v. Darby*, 312 U.S. 100, 113-15 (1941); *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 256 (1964); *United States v. Caminetti*, 242 U.S. 470, 491 (1917). The pertinent discussion in each case cited focuses on Congress's ability to regulate the misuse of the channels of interstate commerce. In *Darby*, it was the power to ban goods produced without minimum labor standards from traveling on the channels of interstate commerce. 312 U.S. at 113-15. In *Heart of*

*Atlanta,* the cited portion concerned Congress's power to keep the channels of interstate commerce "free from immoral or injurious uses." 379 U.S. at 256 (quoting *Caminetti,* 242 U.S. at 491). And in *Caminetti,* the Court upheld the Mann Act, which "seeks to reach and punish *the movement in interstate commerce* of women and girls with a *view to the accomplishment of the unlawful purposes prohibited.*" 242 U.S. at 491 (emphasis added). These cites illustrate Congress's traditional power to keep the channels of interstate commerce free from misuse. In effect, when Congress does this, it is "exclud[ing] from commerce articles whose use in the states for which they are destined it may conceive to be injurious to the public health, morals or welfare." *Darby*, 312 U.S. at 114.

Consistent with this understanding of Congress's power, we have noted that under the first *Lopez* category, it can proscribe shipments of stolen goods, kidnaped persons, and prostitutes from traveling on the channels. *Wilson*, 73 F.3d at 680 n.5. And we have upheld a child pornography statute because "Congress ha[d] set out to prohibit the interstate movement of a commodity through the channels of interstate commerce." *United States v. Schaffner*, 258 F.3d 675, 680-81 (7th Cir. 2001) (citing *Lopez*, 514 U.S. at 559); *see also United States v. Kenney*, 91 F.3d 884, 889 (7th Cir. 1996). These regulations focus on the movement across state lines with an illicit purpose. *United States v. Hoke*, 227 U.S. 308, 322 (1913). That is, the crime is complete once the offending person or good has moved interstate. *Caminetti,* 242 U.S. at 491.

It is not, as the court interprets *Lopez*, a matter of the defendant having traveled for some innocent purpose and then later committing the crime. *See United States v. Mortensen*, 322 U.S. 369, 374 (1944) ("To constitute a violation of the Act, it is essential that the interstate transportation have for its object or be the means of effecting or facilitating the proscribed activities."). A person's mere travel across state lines does not give Congress authority to later regulate all of his future conduct—or in this case, make his previous failure to register in Illinois a federal crime. The Tenth Circuit made this same point in *United States v. Patton*, where it observed that the first *Lopez* "category is confined to statutes that regulate interstate transportation itself, not manufacture before shipment or use after shipment." 451 F.3d 615, 621 (10th Cir. 2006) (McConnell, J.).

In contrast to the statutes that properly regulate a person's travel across the channels of interstate commerce, under § 2250 the court separates the defendant's travel from the crime of failing to register. And that renders it constitutionally problematic. The Supreme Court may have tacitly recognized this in *Carr* when it noted that under § 2250 Congress "subjected such offenders to federal criminal liability only when, after SORNA's enactment, *they use the channels of interstate commerce in evading a State's reach*." *Carr*, *supra* at *8. Under *Carr* the focus is, as it should be, on the sex offender's misuse of the channels of interstate commerce: using them to evade registration. And unless we interpret the statute as *Carr* did, § 2250 is not a permissible use of

congressional power over the channels of interstate commerce.[1]

## B.

The opinion goes beyond the first *Lopez* category and also upholds § 2250 under the second category, noting that Vasquez "was undeniably 'a person . . . in interstate commerce' when he moved from Illinois to California, and traveled to California via the 'channels of interstate commerce.'" Op. at 11. Under that category, "Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Lopez*, 514 U.S. at 558. The court interprets this category to mean that because a person travels across state lines, he is "a person in interstate commerce" and Congress can regulate him thereafter.

But that literal and expansive interpretation of the second *Lopez* category is contrary to our circuit's precedent. There are two parts to that category: "instrumentalities of interstate commerce" and "persons or things in interstate commerce, even though the threat may come

---

[1] In effect, the Supreme Court's opinion in *Carr* verifies the defect I've identified in § 2250 by incorporating this additional requirement into the statute and placing the statute's focus beyond its text and onto the defendant's travel on the channels of interstate commerce.

only from intrastate activities." The first part is self-explanatory.[2] It is the second part concerning "persons or things" that is problematic for courts.

In the midst of this rather arcane area of the law, it is important to remember that *Lopez* doesn't stand for a radical enlargement of Congress's power under the first two categories, but rather an enforcement of limits under the third—the activities that substantially affect interstate commerce. And its three categories should be interpreted as a convenient rhetorical formulation for summarizing Congress's traditional power over commerce. *See United States v. Rybar*, 103 F.3d 273, 286-89 (3d Cir. 1996) (Alito, J., dissenting).

In defining that clause previously, we noted that the "inclusion of the language 'persons and things' was likely based on precedent—not happenstance." *Wilson*, 73 F.3d at 687. And the key to understanding that language is the Supreme Court's citation to *Perez v. United States*; the pertinent language in *Perez* is where the Court notes: "The commerce clause reaches . . . . protection of the

---

[2] In support of the second category, *Lopez* cited three cases, one of which, *Perez*, cited two statutes. The first two cases concerned railroads, which are actual instrumentalities of interstate commerce. *Houston, E. & W. Tex. Ry. v. United States (Shreveport Rate Cases)*, 234 U.S. 342 (1914); *Southern Ry. Co. v. United States*, 222 U.S. 20, 32 (1911). Specifically, they concerned Congress's ability to set rates and standards for railroads. *Shreveport Rate Cases*, 234 U.S. at 351-53; *see also Southern Ry. Co.*, 222 U.S. at 26.

instrumentalities of interstate commerce, as for example, the destruction of an aircraft (18 U.S.C. § 32), or persons or things in commerce, as, for example, thefts from interstate shipments (18 U.S.C. § 659)." 402 U.S. 146, 150 (1971). *Lopez* cites to these same statutes. 514 U.S. at 558 (citing *Perez*, 402 U.S. at 150 (citing 18 U.S.C. §§ 32, 659)). Essentially, what *Lopez* did was define this power by looking to the explication given in *Perez*. Understood in this way, the phrase "persons or things in interstate commerce" clearly refers to and must be defined by the laws that Congress can pass to protect the persons or things that the instrumentalities are moving. *Wilson*, 73 F.3d at 687.

With that understanding, we have expressed reservation that videotape cassettes that have moved across state lines are "things in interstate commerce." *United States v. Angle*, 234 F.3d 326, 337 n.12 (7th Cir. 2000). We have also avoided using the second category to uphold legislation that criminalized interfering with an abortion facility simply because the pregnant women have traveled there. In doing so, we noted that "[h]olding that the Access Act qualifies as a regulation of an instrumentality of interstate commerce based on a literal reading of one sentence in *Lopez* . . . is unnecessary without further guidance from the Supreme Court." *Wilson*, 73 F.3d at 687 n.12. This makes sense because the second *Lopez* category involves "things actually being moved in interstate commerce, not all people and things that have ever moved across state lines." *Patton*, 451 F.3d at 622. Thus, it is wholly inconsistent with our precedent to uphold the constitutionality of § 2250 as

regulating sex-offenders as a "person . . . in interstate commerce."

## C.

Unlike the other circuits to address this question, the court also cites *Scarborough v. United States*, 431 U.S. 563, 577 (1977) and the "minimal nexus" reasoning as a basis to uphold § 2250 under the Commerce Clause.[3] Notably, none of the other circuits has directly relied on *Scarborough* and its minimal nexus test to uphold § 2250 as it applies to persons who have traveled interstate. In doing so, the court is recognizing a power Congress never had, and doing so without giving deference to the reasoning in *Carr*.

*Scarborough* created the legal fiction that once a gun has crossed state lines it is forever "in or affecting" commerce and Congress can prohibit felons from possessing them—this is described as "a minimal nexus." 431 U.S. at 575. We have also used the logic of a "minimal nexus" or "limited nexus" to uphold the constitutionality of the car-jacking statute. *United States v. Taylor*, 226 F.3d 593, 600 (7th Cir. 2000). Although this test seems to work when applied to things, such as guns and cars, there are four problems with extending the minimal or limited nexus rationale to persons.

---

[3] The opinion does not suggest that § 2250 can be upheld under the third *Lopez* category, which only comes into play with economic activity that substantially affects interstate commerce. That is not at issue here.

First, while *Scarborough* is still good law as far as its reasoning goes in felon-in-possession cases, it has been implicitly criticized by the Supreme Court in the commercial arson context in *Jones v. United States*, 529 U.S. 848, 857 (2000). We have recognized that criticism and refused to extend the minimal nexus test to materials. *United States v. Craft*, 484 F.3d 922, 927 (7th Cir. 2007). And other courts and scholars have noted the problems inherent in *Scarborough*'s reasoning and extending it to other circumstances. *United States v. Bishop*, 66 F.3d 569, 593-600 & n.13 (3d Cir. 1995) (Becker, J., concurring in part and dissenting in part); *see also* Dean A. Strang, *Felons, Guns, and the Limits of Federal Power*, 39 J. Marshall L. Rev. 385 (2006); *United States v. Chesney*, 86 F.3d 564, 577-82 (6th Cir. 1996) (Batchelder, J., concurring).

Second, there is a logical distinction between guns and persons that can't be lost in applying *Scarborough* here. The cases endorsing the "minimal nexus" test concerned things—commodities that were included in the actual makeup of commerce. But persons are different: we are not inherently commercial; we cannot be bought or sold; and our participation in commerce is limited to our decision to engage in it. Consistent with this distinction, in the felon-in-possession context it is the gun that has crossed state lines; it is not enough that the felon has crossed state lines and subsequently possesses a gun that has remained intrastate. *See United States v. Travisano*, 724 F.2d 341, 347-48 (2d Cir. 1983).

Third, the Supreme Court in *Carr* looked at *Scarborough* and the minimal nexus rubric and noted that § 2250 is

distinguishable: "Understanding the act of travel as an aspect of the harm Congress sought to punish serves to distinguish §2250 from the felon-in-possession statute to which the Seventh Circuit analogized." *Carr*, *supra* at *9. Indeed, the Court went on to note that analogizing this to *Scarborough* is inappropriate: "In this case, the proper analogy is not, as the Seventh Circuit suggested, between the travel of a sex offender and the movement of a firearm; it is between the sex offender who 'travels' and the convicted felon who 'possesses.'" *Id.*

Fourth, expanding *Scarborough* will obliterate the limits between what is local and what is national. In striking down the Violence Against Women Act in *United States v. Morrison*, the Supreme Court observed that if the "aggregated impact" rationale under the third *Lopez* category were adopted, it would allow Congress to "regulate murder or any other type of violence" and even reach issues including "family law and other areas of traditional state regulation." 529 U.S. 598, 616 (2000). While Congress could not regulate those areas under its broadest power in *Morrison*, it could under the court's rationale here. By applying the minimal nexus to a person's travel, Congress could take over the states' ability to punish domestic crimes.

For instance, under 18 U.S.C. § 2262 (interstate violation of a protective order), the government would no longer have to prove the defendant traveled in interstate commerce with the intent to violate a protective order. It would only have to show that the defendant had at some time traveled across state lines, regardless of his purpose, and that at some time later he violated a protective

order. If this were true, Congress could effectively take over the monitoring and control of local, domestic crime, by making an element of the crime that the person has traveled interstate at some time. That, however, stands in complete contradiction to *Morrsion*. As the Supreme Court aptly noted: "The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." 529 U.S. at 618-19 (citation omitted).

Thus, I believe that consistent with a government of limited powers and in light of the Supreme Court's precedent in this area, we should not extend *Scarborough*'s "minimal nexus" beyond firearms to reach persons in an effort to find that this statute comes under the Commerce Clause.

### D.

When § 2250 is applied in the way it was in *Dixon* and by the court here, it emphasizes the need to apply *Carr*'s considered dicta to the statute and require a showing that the defendant's travel was with an illicit intent to evade, elude, or avoid registering. The alternative is an unconstitutional statute.

### III.

This leads to my final point of disagreement: this is a specific-intent crime. That is true applying the statute either as we did in *Dixon* or as the Supreme Court did in

*Carr*. If we follow *Carr*'s reasoning and the purpose of the travel is vital to the statute that naturally forces the government to prove that the defendant had an elevated intent. It is not enough to travel and negligently or through ignorance fail to register.

To address the court's position on this point, interpreting the statute apart from *Carr* this is a specific-intent crime. The court looks to *United States v. Cox*, 577 F.3d 833, 836 (7th Cir. 2009), and its reasoning in support of interpreting § 2250 as a general-intent crime. In *Cox* the statute at issue proscribed conduct that was already unlawful: transporting someone across state lines to become a prostitute. But it added the element that the person be under 18. We held that under the statute the government doesn't have to prove that the defendant knew he was transporting a minor, which makes sense, given the strict liability that normally attaches to sexual acts with minors.

But the statute at issue here does not proscribe inherently unlawful conduct; rather, it requires that the defendant must register. He has an affirmative, administrative duty—one that he must perform or be imprisoned. Thus, it is reasonable that he would have to know about the duty before he is held accountable. Nothing suggests that Congress intended to hold someone responsible for knowingly failing to do something without any evidence that he knew what he was supposed to do.

Moreover, the court's position that we can transfer knowledge between a state-imposed duty and a federal duty is difficult to reconcile with the basic concepts of justice and our precedent. *See United States v. Pulungan*,

569 F.3d 326, 331 (7th Cir. 2009). Nothing in the statute defines the § 2250 obligation with reference to the Illinois obligation. They are distinct. And there is no reason to think that Vasquez's known legal duty under Illinois law should transfer to his federal obligation. In short, just because Vasquez knew about his state duty to register we cannot uphold his conviction because we assume he was aware of his federal duty to register.

### IV.

In sum, there are two statutes here: § 2250 as it is written and as we have interpreted it pre-*Carr*, and as the Supreme Court has interpreted it in *Carr*. Taking § 2250 as it is written, the statute is unconstitutional because it does not require interstate travel with the intent to avoid or evade registration under SORNA. Under the Supreme Court's reasoning in *Carr*, however, the statute passes muster constitutionally because it regulates the defendant's travel, by attaching criminal liability to sex offenders who travel interstate to evade registration. And applying the reasoning in *Carr*, we would have to overturn Vasquez's conviction because there is no proof of why he traveled. I also believe that both the grammatical structure of § 2250 and its context counsel reading this as a specific-intent crime. For these reasons, I must respectfully dissent.